## OTT v. DEER CREEK PLACER MIN. CO.

Circuit Court of Appeals, Ninth Circuit.
December 17, 1929.

Rehearing Denied January 28, 1930.

No. 5845.

C. E. McLaughlin and McLaughlin & Mc-
Laughlin, all of Sacramento, Cal., for ap-
pellant.

Irvin W. Ayres and Franklin T. Poore,
both of San Francisco, Cal., for appellee.

Before RUDKIN, DIETRICH, and
WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. Beginning
with April 18, 1927, and ending with July
7, 1927, the International Rare Metals Re-
covery Company delivered to Emil J. N.
Ott five separate lots of concentrates, or
clean-ups, under an agreement that Ott
should extract the gold therefrom and pay
to the Recovery Company the sum of $17.30
per ounce for the gold so extracted, after
deducting certain minor charges. Each lot
thus delivered weighed several hundred
pounds, but the exact weights do not appear
in the record, except, perhaps, in one or two
instances. Upon the receipt of the concen-
trates, they were milled and reduced to amal-
gam, and the amalgam was then retorted,
and the gold extracted therefrom. Accord-
ing to the returns made to the Recovery Com-
pany by Ott, the value of the ore extracted
from the five deliveries, less charges, was
$422.33. The return of the quantity of ore
extracted from each lot was accompanied by
a check for the value of the ore, less charges,
and, so far as the record discloses, no ob-

jection was interposed to the returns thus
made until the institution of the present ac-
tion.

At or about the time of making each re-
turn to the Recovery Company, Ott like-
wise made a report to the state mineralogist.
This report was apparently made pursuant
to the requirements of the Ore Buyers' Li-
cense Acts of the state. St. Cal. 1925, pp.
162, 164; St. Cal. 1927, p. 214. The earlier
act provides that, every person, firm, as-
sociation or corporation, carrying on the
business of milling, sampling, concentrating,
reducing, purchasing or receiving for sale
ores, concentrates, or amalgams, bearing gold
or silver, gold dust, gold or silver bullion,
nuggets or specimens shall keep and preserve
a book in which shall be entered, at the time
of the delivery of any ores, concentrates or
amalgams, bearing gold or silver, gold dust,
gold or silver bullion, nuggets or specimens,
the name of the party on whose behalf the
delivery was made; the weight, or amount,
and a short description of each lot; the name
and location of the mine; the name of the
party making the delivery; the date of de-
livery, and whether the party making the
delivery is a lessee, superintendent, foreman,
or workman in the mine. The later act (§ 3)
provides that, it shall be the duty of every
such person, firm, association or corporation
to file monthly with the state mineralogist
a report of all purchases made under the
provisions of the act.

It would seem that the book or record
to be kept by a licensee should contain the
weight, or amount, and a short description
of the ore, concentrates, or whatever was de-
livered to him in its original form, and not
the value of the gold extracted therefrom,
and it would likewise seem that the report
to the state mineralogist should contain the
same information; but that practice does
not seem to have been followed here. Wheth-
er any such book or record was kept by the
appellant does not appear. The appellee
read certain pages of a book containing en-
tries of all gold shipped by the appellant
to the mint during the months of April,
May, June, and July, 1927, but this book or
record can hardly be said to comply with the
requirement of the statutes. We may add,
however, that the entries contained in this
book are the same in every instance as the
returns made to the Recovery Company.
The reports made to the state mineralogist
described the material delivered as placer
gold in four instances and as placer in one
instance. The returns made to the Recovery
Company and the reports made to the state

mineralogist differ considerably as to the quantity of gold. Thus, under date of April 18, 1927, the report to the company was 10.50 ounces, while the report to the mineralogist on the same day was 15 ounces. May 10 the report to the company was 1.30 ounces, while the report to the mineralogist on the following day was 20 ounces. June 15 the report to the company was 5.75 ounces, while the report to the mineralogist on the following day was 60 ounces. June 30 the report to the company was 4.75 ounces, while the report to the mineralogist on the same day was 98 ounces, and July 24 the report to the company was 3.75 ounces, while the report to the mineralogist three days later was 30 ounces.

Under a reorganization of some kind, the Deer Creek Placer Mining Company succeeded to the rights of the Recovery Company, and the old company assigned to the new all its right, title, and interest in and to a certain account and claim for damages, whether compensatory, punitive, or of any other nature whatsoever, against Ott. The present action was thereafter instituted by the assignee to recover the difference between the value of the ore as disclosed by the reports made to the state mineralogist and the value of the ore as shown by the returns made to the Recovery Company and paid by Ott. The action was tried before the court without a jury, by written stipulation of the parties, and from a judgment in favor of the plaintiff, in accordance with the prayer of its complaint, the defendant has appealed.

The sufficiency of the testimony to support the general finding and judgment is the only question presented for review. The principal evidence on the part of the appellee is the admissions found in the reports to the state mineralogist. If these admissions have been satisfactorily explained, there is little left in the case. The explanation offered by the appellant is this: The concentrates were first milled and the metals therein reduced to amalgam; the amalgam was then retorted and the gold extracted therefrom, and the report to the state mineralogist was based on the weight of the retorted amalgam, not upon the weight of the gold. This explanation is a reasonable one, in view of other evidence in the case. The superintendent of the Recovery Company testified that he was familiar with the process of milling concentrates and extracting the gold therefrom; that he was present throughout the entire operation when the first delivery was made, and that the return of 10.50 ounces was entirely satisfactory to him. This testimony, together with that of the appellant, utterly refutes the claim that the first return was incorrect. But the testimony of the superintendent went beyond this. After testifying that the return from the first delivery was 10.50 ounces, he was asked how much base material was taken to the appellant at that time, and answered, "15 ounces." Counsel for the appellee here interrupted the witness, stating that he referred to the weight of the original bulk, and the witness answered, "Around 310 pounds." The 15 ounces thus referred to by the witness was doubtless the weight of the retorted amalgam, or base material, which corresponds exactly with the report to the state mineralogist. The discrepancy between the return to the Recovery Company and the report to the state mineralogist was thus satisfactorily explained as to the first delivery, and the same explanation extends to the other deliveries as well. As already stated, there is little to the case beyond the admissions contained in the reports.

There was some testimony tending to show that a sample taken from a sluice box, containing about 400 pounds of concentrates, was assayed and showed a higher percentage of gold than was disclosed by the return to the Recovery Company, and there was likewise some testimony tending to show that about 200 ounces of gold was delivered at the mint by the appellant in excess of the amounts reported to the state mineralogist; but such testimony was entirely insufficient, in our opinion, to authorize a recovery of the amount claimed, must less to warrant a finding that the appellant was guilty of filching the gold entrusted to him.

The judgment is reversed, and the cause remanded for a new trial.